**LEMKE v. UNITED STATES.**

No. 13342.

United States Court of Appeals
Ninth Circuit.

Feb. 19, 1954.

Rehearing Denied March 22, 1954.

Writ of Certiorari Denied
June 7, 1954.

See 74 S.Ct. 866.

Julien A. Hurley, Fairbanks, Alaska,
for appellant.

Theodore F. Stevens, U. S. Atty., Fairbanks, Alaska, Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BONE, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

■ The appellant was convicted of the crime of attempting to obtain money by false pretenses in violation of § 65–5–81, Alaska Compiled Laws Ann., 1949.[1] His brief upon this appeal [2] contains no specification of errors as is required by Rule 18(d) of this court and therefore may be said to present nothing for review. United States v. Cushman, 9 Cir., 136 F.2d 815; United States v. Shingle, 9 Cir., 91 F.2d 85; Walton v. Wild Goose Mining & Trading Co., 9 Cir., 123 F. 209. However, we have the power to notice a plain error even though not properly brought to the attention of the court, Criminal Rule 52(b), 18 U.S.C.A. Accordingly we now undertake to glean as best we may from appellant's brief the points which he attempts to argue.

The evidence shows that Lemke was employed as manager of the Civilian Mess at Ladd Airforce Base, near Fairbanks, Alaska. This was a privately owned and operated concern engaged in the business of operating a cafeteria. Lemke, as manager, had prior to the date named in the indictment, purchased vegetables for the use of the cafeteria from one Elbert, a truck farmer. Lemke proposed to Elbert that the latter make out three invoices or sales slips showing pretended sales of vegetables to the Civilian Mess for a sum aggregating $60 and that Lemke would then sign and approve the slips and present them for payment so that the $60 would be paid to Elbert who would then divide the money between himself and Lemke. Elbert reported to the Office of Special Investigation of the Airforce the proposal which Lemke had made to him and the officers there in charge advised him to prepare the slips and to acquiesce in Lemke's proposal and keep the officers informed of what happened. Elbert upon his next meeting with Lemke, and under the latter's direction, made out three false sales slips spacing them in his book of sales slips and dating them in such manner as to indicate three separate sales on separate dates. Lemke signed the slips and sent them to the Civilian Mess office for payment. Under the bookkeeping system then in vogue sales slips drawn in that manner and signed by Lemke were treated as vouchers authorizing payment to the sellers shown on the slips. Hence, in ordinary course, the bookkeeper would at the end of the month add the amounts of these vouchers and write a check for the total and deliver it to Elbert. In this instance the check was not written because payment of the invoices was stopped in consequence of the officers having learned what was afoot. Lemke was then indicted for attempting to obtain money by false token and with intent to defraud.

It is argued that these facts are insufficient to show that any crime was committed, and that the evidence was insufficient to justify a conviction. It is said that at best, the acts and things done by the defendant were a mere prepartion to commit a crime, and that even if he was a would-be criminal his intention had not been followed by acts to a point which made his conduct an attempt within the meaning of that term.

Again, it is argued, that that which the defendant put under way, or the things which defendant put in motion could never have resulted in a consummated crime even if they had not been interrupted for the reason that had the

1. "§ 65–5–81. Obtaining money or property by false pretenses. That if any person shall, by any false pretenses or by any privy or false token, and with intent to defraud, obtain, or attempt to obtain, from any other person any money or property whatever * * * such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than five years."

2. For the earlier history of his appeal here see Lemke v. United States, 346 U.S. 325, 74 S.Ct. 1.

alleged fraudulent plan been carried out, the result would have been no more than to put the $60 in the hands of Elbert, and that until and unless Elbert did further acts by way of dividing those funds with Lemke, the latter would not have obtained any money by his false pretenses. It is said that an accused cannot be convicted of an attempt to obtain money by false pretenses where had he succeeded in what he had attempted he would not be guilty of the crime of obtaining money by false pretenses.

■ It is plain that what Lemke attempted to do here was to defraud the Civilian Mess of $60. The fact that had his purpose been consummated the money would have passed into Elbert's hands rather than his own, is of no consequence. In Griggs v. United States, 9 Cir., 158 F. 572, 573, dealing with a conviction under an earlier but similar statutory provision relating to Alaska, this court said: "The fact that one of two or more persons who obtain property by false pretenses receives no share of the property is no defense". Such is the established rule.[3]

The evidence here was sufficient to show that Lemke had put in motion a procedure which, had it not been interrupted in consequence of the intervention by the officers, would have resulted in $60 being paid by check to Elbert for vegetables never delivered or intended to be delivered. Had Lemke's plan been consummated the Civilian Mess would have been defrauded in consequence of Lemke's false pretenses. That is all that was required to complete the crime defined in the statute, and it is of no consequence that Lemke himself could not have profit-ed until or unless Elbert made the contemplated division of the proceeds.

■ With respect to the claim that Lemke's conduct did not go beyond mere preparation for commission of a crime, it should be noted that § 65–2–5, Alaska Comp.Laws Ann., 1949, provides: "That if any person attempts to commit any crime, and in such attempt does any act toward the commission of such crime, but fails, or is prevented or intercepted in the perpetration thereof, such person, when no other provision is made by law for the punishment of such attempt, upon conviction thereof, shall be punished as follows: * * *." The attempt is complete if the person does any act toward the commission of the crime and does so in an attempt to commit it. Here the necessary overt act on Lemke's part is plain. He placed his signature on each of the three sales slips. He knew that according to the established procedure his signature would be taken to be an authorization to write a check to cover. They were given by Lemke in the accustomed manner to the bookkeeper who had totaled them on his adding machine and who was prepared to write a check for them when the payment was stopped.

■■ Of course it is elementary that mere preparation to commit a crime, not followed by an overt act done toward its commission, does not constitute an attempt. Wooldridge v. United States, 9 Cir., 237 F. 775. There are borderline cases where it is sometimes difficult to determine whether preparation to commit a crime has come near enough to the accomplishment of the act so that an attempt has been committed.[4] But this is no such borderline case. Lemke's overt

---

3. Whitfield v. People, 79 Colo. 108, 244 P. 470, 472: "It is immaterial who gets the goods with which the victim of false pretenses is induced to part. The gist of the offense is the inducement to surrender the goods. The intention of the owner to part with his property is the vital point upon which the obtaining hinges and is to be determined." People v. Jones, 36 Cal.2d 373, 224 P.2d 353, 357: "Under such circumstances, it is not necessary that the money was obtained by defendant for himself, but it is sufficient if it appears that as the result of his false representations, the money was 'delivered to another, either for the benefit of that other or for (defendant's) benefit.'"

4. See for example Commonwealth v. Peaslee, 177 Mass. 267, 59 N.E. 55, discussed in United States v. Coplon, 2 Cir., 185 F.2d 629, 633, 28 A.L.R.2d 1041.

act was a long move in the direction of accomplishing the completed crime. Proof of his guilt was sufficient.

 Finally it is argued that the instructions given to the jury failed adequately to define the crime charged or to advise the jury as to what constituted the material allegations of the indictment. We have examined the instructions and are of the opinion that no fault may be found with them in this respect. One instruction requested was to the effect that testimony of an accomplice (meaning Elbert) should be viewed with distrust. But Elbert was not an accomplice. Cf. Wigmore, Evidence, 3d Ed. § 2060, subd. (d). The other instructions requested by defendant were but a different phrasing of a charge which adequately covered the issues, and it was not error to refuse them.

We find no error in the record. The judgment is affirmed.