Douglas O. GILMORE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15332.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 23, 1959.

Decided Dec. 10, 1959.

Mr. Hugh Latimer, Washington, D. C. (appointed by this court), for appellant.

Mr. William W. Greenhalgh, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This is an appeal from conviction on all counts of a four count indictment charging multiple violations of Title 22, D.C.Code, Section 1301, obtaining money by false pretenses in cashing checks which the issuer had no reason to suppose would be honored. A sentence of 16 months to 4 years on each of the four counts was imposed, sentences to run concurrently.

Reversal is urged on several grounds: (1) absence of evidence that those who cashed Gilmore's checks relied on the representation that he had funds on deposit to cover them; (2) absence of evidence that there was an actual defrauding since those who cashed the checks were in effect "insured" by the issuers of credit cards; (3) that Gilmore was denied effective assistance of counsel because his counsel of record (from New York City) was not present when the case was called for trial with the result that Washington counsel not familiar with the case had to go to trial on short notice. A further ground for correction

of error in the sentence is urged, and the Government concedes the error, and consents to its correction by a remand for resentencing.

The record shows that Gilmore arrived in Washington at 2:30 a. m., on July 30, 1958, with a brief case, but no other luggage. He registered at the Mayflower Hotel on an American Hotel Association credit card. Thereafter in quick sequence he registered at the Hotel Statler at 7:30 a. m., at the Hotel Washington at 9:06 a. m., at the Hotel Willard at 9:46 a. m. and at the Shoreham Hotel less than three hours later. In similarly swift sequence, with the aid of his credit card, he cashed checks as follows: (as set forth in the indictment)

| Count 1. | Hotel Shoreham | $150.00 on Underwriters Trust Co., N.Y.C. |
| Count 2. | Hotel Washington | $200.00 on Underwriters Trust Co., N.Y.C. |
| Count 3. | Hotel Mayflower | $200.00 on Bankers Trust Co., N.Y.C. |
| Count 4. | Hotel Statler | $200.00 on Bankers Trust Co., N.Y.C. |

When these four checks were presented for payment all were dishonored for lack of funds, though the hotels were eventually reimbursed by the issuers of Gilmore's credit card.

Appellant was arrested while trying to cash a fifth check at the Hotel Willard at 10:00 p. m., on July 30th. At the time of arrest, Gilmore admitted cashing the checks, stating that though he had accounts in 5 New York banks, he did not have sufficient funds in either Underwriters Trust, or Bankers Trust. On his person were two receipts for Western Union money orders totaling $770 which he had sent during that same day to the Chemical Corn Exchange Bank of New York, a bank on which he drew no checks while in Washington.

At trial the hotel cashiers without exception testified that they cashed the checks because they believed they were good checks. Witnesses from the drawee banks, however, showed Gilmore's balance on July 30th to be $10.80 in the Underwriters Trust, and $60.37 in Bankers Trust. It was against these balances that Gilmore cashed four checks totaling $750.

Appellant's statements were in conflict as to the disposition of the money secured from the four hotels. He first told the arresting officer that it was lost during the day in "crap games," but at trial, testified that the $750 was part of the amount sent by Western Union money orders to the Chemical Corn Exchange Bank. At no time did he satisfactorily explain why he drew checks on two New York banks in which he had insufficient funds, only to send the money to a third New York bank on which he did not draw at all while in Washington. The only explanation offered for this bizarre behavior was that he cashed checks in order "to build my credit, personal credit" with these hotels. He explained sending the money to New York saying it was because he disliked carrying large cash amounts on his person.

When questioned as to how he thought the four checks for $750 would be covered, Gilmore explained that a former business associate, Bernard Shubert, was indebted to him for $3,500, and that on July 26th Shubert had promised to deposit $1,500 in Underwriters Trust, and $2,500 in Bankers Trust to Gilmore's account. Appellant admitted, nevertheless, that as of July 30th he knew these deposits were never made. Gilmore testified that relations between Shubert and himself had been strained for years, and that he (Gilmore) was even then suing

Shubert for $50,000 on some other transactions. Shubert never appeared as a witness, nor does the record show any serious effort made to secure his testimony.[1]

In explaining his presence and activities in Washington, Gilmore testified he was engaged in the public relations and advertising business; that he was a tax accountant; and that he was in Washington as an entrepreneur in business promotion but had no specific business or people in mind. He registered in five hotels in order, he claimed, to have space for business conferences with persons having products to market. These persons were to be contacted through a planned advertising campaign. However, during the day in question, Gilmore admittedly held no conferences, placed no ads in any newspaper; the only people he saw were the other contestants in "crap" games in hotels. He left no luggage, papers or personal property of any kind at any of the hotels he had engaged that day, and had no luggage with him except a brief case, though he allegedly planned to stay in Washington for several days. No defense witnesses were called to show any instances of his past entrepreneurial activities. The only evidence in this connection was that he had gone to Boston on July 25th, stayed for a day or so, and then went to Chicago for another day, registering at three or four hotels there. No advertising nor entrepreneurial activities were shown to have taken place at either city.

### 1.

■ Appellant's first ground for reversal is that there was no evidence that the hotels were induced to part with their money by the false representations that the checks were properly covered by funds. In essence, he argues that the hotels were induced to part with their money, not on the belief that the checks were good, but relying solely on the issuer of the credit card to make good whatever loss the hotel might suffer. The answer to this contention is that the reliance necessary for conviction under this statute is a factual question for the jury and it was resolved against him. We cannot say reasonable men must of necessity have had a reasonable doubt about his being guilty of the crime of false pretenses after hearing his story. Robinson v. United States, 1914, 42 App. D.C. 186; Randle v. United States, 1940, 72 App.D.C. 368, 113 F.2d 945. Presentment of a check is a representation that the paper is covered by sufficient funds. Clagett v. United States, 1923, 53 App.D.C. 134, 289 F. 532. And it is not necessary that belief in the check's worth, which belief was testified to by all the hotel employees involved in this case, be the sole inducement for their accepting it. The law merely demands that this belief be a contributing influence sufficient to turn the scale, or to put it another way, that the alleged fraud would not have been accomplished but for the misrepresentations made. Partridge v. United States, 1913, 39 App. D.C. 571.[2] In this case the jury has found that the hotel employees cashed these checks believing them to be good.

■ Appellant next contends that there was no fraud since the hotels suffered no eventual loss, being reimbursed by the American Hotel Association. This misconstrues the nature of the offense. The gravamen of the crime is the obtaining of value through a false representation. It is committed and complete the instant the maker of the check re-

---

1. Gilmore testified that he tried to find Shubert, but that "The man can't be found," and was not listed in the New York telephone directory. Since Shubert had allegedly made his promise of deposit of the funds on July 26, 1958, a few days before appellant's arrest, it was no doubt difficult for the jury to believe that Shubert could completely disappear in the intervening time so that Gilmore could not find him. Other than looking in the directory, Gilmore showed no diligent or serious search.

2. In the Partridge case, the court uses the term "preponderating influence," but the context shows that it was doing so in the "but for" sense only. See 39 App. D.C. at page 581.

ceives cash from one who relies on the checks under circumstances where the maker "has no reason to suppose it will be honored" when presented. Clagett v. United States, supra [53 App.D.C. 134, 289 F. 536]. It is immaterial that a third party, be it guarantor, endorser, or insurer makes good the payee's loss. The offense is not "purged by subsequent restoration or repayment." [3]

The appellant's contentions regarding the substantive aspects of his convictions lack merit. There would have been little need to expand these conclusions at such length but for the fact that this particular brand of confidence game is one of recent origin since the advent and widespread use of the modern "credit card." The facts presented here show nothing more or less than the application, even if clumsy, of ancient confidence game techniques to a new commercial phenomenon, but it is not beyond the reach of existing laws.

### 2.

■ Appellant's remaining grounds are procedural. He alleges lack of effective assistance of counsel arising out of the failure of the assignment judge below to grant a continuance when appellant showed his New York attorney could not be present that day. This necessitated Gilmore's local counsel to proceed at trial on short notice.

Appellant was indicted on September 29, 1958, and on October 3, 1958 he entered a plea of not guilty. At that time his New York attorney, George Feit, not a member of the District of Columbia bar, filed an affidavit that he would represent Gilmore at trial. At Calendar Call on October 30th, a local Washington attorney, who had also filed appearance for appellant, appeared and presented an affidavit from Feit stating Feit could not be present on that day as he was engaged at trial in New York. Feit did not say when he would be available, but moved for continuance for a reasonable time.

The assignment judge refused, and stated local counsel would have to take the case. Local counsel did not protest this directive, in fact he acquiesced by saying "very well." At no time was the assignment judge told that local counsel was not sufficiently prepared for trial, or that further time would be needed for the gathering of evidence, or the obtaining of witnesses. Since the government had out-of-town witnesses present on that day, the case was set down for 1:45 p. m. of Thursday, October 30th, the same day as the Calendar Call. The first day of trial was taken up with jury selection; the government's opening statement; and the calling of five government witnesses—four of the hotel cashiers and an official of Underwriters Trust. These were all subjected to skillful cross-examination by defense counsel. The trial was then recessed until the following Monday, when the government concluded its case by calling three witnesses: an official of Bankers Trust of New York, the arresting officer, and the assistant manager of the Hotel Washington. At no time during the trial, either on Thursday or Monday did trial counsel indicate that he was handicapped in any manner by commencing trial at short notice. The three day recess, of course, afforded three more days for preparation, if indeed any more was needed. There was no demand on Monday that any of the Thursday witnesses be recalled for further cross-examination, nor was request for continuance made. Gilmore was the only witness for his defense, and he was perhaps one of the most damaging against himself.

After conviction, appellant moved for a new trial, raising his plea of ineffective assistance of counsel for the first time. This motion was denied.

■■ The granting or refusal of a continuance is a matter of discretion of the judge who hears the application, and is not subject to review absent a clear abuse. Payton v. United States, 1955, 96

---

3. In Foster v. Goldsoll, 1919, 48 App.D.C. 505, the misrepresentations were not made to the person who later claimed reliance.

U.S.App.D.C. 1, 222 F.2d 794. In determining whether that abuse is present, we must consider, among other things, the nature of the charge and the nature of the evidence presented to sustain the charge. Shores v. United States, 9 Cir., 1936, 80 F.2d 942. The crime charged is not a complicated or difficult one to analyze. Any defenses Gilmore may have had were immediately obvious to any lawyer and need no more than a few days, at most, to meet, if they can be met. Indeed, this is demonstrated by the fact that, even at short notice, trial counsel skillfully conducted the defense.

In view of the undisputed fact that Gilmore came to Washington with no luggage, registered in five hotels, cashed checks on banks in which he had insufficient funds only to transmit those funds immediately to another bank, and had by his own story suggested the possibility that he had done this in other cities, it is difficult to conceive what evidence could have been presented in his behalf. Gilmore's only substantial defense would seem to be that he reasonably thought Shubert would deposit sufficient funds to his account. Yet no serious attempt was made to obtain Shubert's testimony, and it is clear that during the week end recess there was time enough for such an attempt to have begun, assuming excusable neglect for having failed to do it earlier. Indeed, in all the circumstances, the jury had a right to disbelieve the claim that Shubert ever promised to deposit any funds in any bank.

A party seeking review of a refusal of a continuance must make a showing that the continuance is reasonably necessary for a just determination of the cause. Such a showing is made by offering to prove what evidence, if any, will be gained by the grant, and what relevance it has to the charge. Neufield v. United States, 1941, 73 App.D.C. 174, 118 F.2d 375. Appellant never attempted to make such a showing to the assignment judge, nor to the trial judge. Indeed, when he

came before the trial judge he asked no continuance, nor did he exhibit any reluctance to try the case at once. In truth, except for general remarks as to what counsel could do as far as preparation is concerned, there is no showing even now of any legally acceptable reason for a continuance. The facts of the case suggest such a showing cannot be made. In these circumstances, we cannot say the trial judge abused his discretion.

3.

What we have said disposes of the attacks on conviction. However, since the government concedes inadvertent error in the sentencing [4] and agrees to a remand for resentencing, we affirm the conviction, vacate the sentence, and remand to the District Court for re-sentencing in accordance with the statute.

Affirmed, and remanded for resentencing.

---

**4.** The Trial Judge sentenced appellant to a term of sixteen months to four years on each count, to run concurrently. This exceeds the statutory limit of punishment (three years) set by D.C.Code § 22–1301 (Supp. VII, 1959).