Salvatore J. CIULLO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17659.

United States Court of Appeals
District of Columbia Circuit.

Argued June 28, 1963.

Decided Oct. 31, 1963.

Mr. Jacob Goldberg, Washington, D. C., with whom Mr. Norman A. Flaningam, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty. with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BASTIAN and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

Appellant was indicted on a charge of violating the false pretense statute,[1] convicted, and sentenced to imprisonment for one to three years. He contends that the trial court erred in refusing to charge

1. "Whoever, by any false pretense, with intent to defraud, obtains from any person anything of value, * * * and whoever fraudulently sells, barters, or disposes of any bond, bill, receipt, promissory note, draft, or check, or other evidence of indebtedness, for value, knowing the same to be worthless, * * * shall, if the value of the property or the sum or value of the money or property so obtained, procured, sold, bartered, or disposed of is $100 or upward, be impris-

the jury on the lesser included offense of passing a bad check.[2]

■■ The crime of false pretense has five elements: false representation, knowledge of falsity, intent to defraud, reliance by the defrauded party, and obtaining something of value. The first three are enough to violate the bad check statute when the representation involves a worthless check.

The Government in its brief appears to accept the principle that, in order to obviate the need for the requested instruction, the defense testimony must "affirmatively" establish the distinguishing elements, i. e., obtaining and reliance. We take "affirmatively" in this context to mean that the evidence in question admits of no rational inferences other than those establishing the existence of the two elements involved. To apply a lesser standard would be to trench upon the jury's function, and to deprive appellant of his right to have the jury reach its own conclusions from evidence which is susceptible of varying interpretations. We turn to the record in this case, therefore, for the purpose of making such a rigorous and exacting measurement.

A salesman, testifying as a Government witness, identified appellant as the man who, with a girl, entered a Dalmo Appliance Company store to buy a television set and in payment wrote the check which proved worthless. The salesman said he relied on the validity of the check in giving the appellant a receipt which entitled him to pick up the set at another Dalmo store. On cross-examination, the witness admitted that he heard appellant and the girl discussing the fact that the set was to be hers; his final response, however, was that he could not "say with certainty whose set it was." He stated flatly that both the girl and appellant were strangers to him. The girl, called to testify by the appellant, stated that the set was for her, but that because she was too young to enter into an installment purchase contract, she agreed with appellant that he would pay the purchase price and she would reimburse him in monthly payments. On direct examination she testified that, in her presence, appellant picked up the set, placed it in his car, drove to her apartment, and carried the set in. She further stated that the set remained hers and that she subsequently paid the full purchase price to Dalmo's upon discovering that the appellant's check was worthless.

We think one distinguishing element, that of obtaining, was removed from dispute by defense testimony which conclusively established that appellant obtained something of value—either for himself or for another—from the allegedly defrauded merchant.[3]

■ The distinguishing element of reliance presents a greater problem and requires a more detailed examination of the relevant portions of the record. In weighing this evidence, we are mindful

oned not less than one year nor more than three years; or, if less than that sum, shall be fined not more than $200 or imprisoned for not more than one year, or both. * * *" D.C.Code, § 22–1301.

2. "Any person within the District of Columbia who, with intent to defraud, shall make, draw, utter, or deliver any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor.

and punishable by imprisonment for not more than one year, or be fined not more than $1,000, or both. * * *" D.C. Code, § 22–1410.

3. See Lemke v. United States, 211 F.2d 73, 74–75 & n. 3 (9th Cir.), cert. denied, 347 U.S. 1013, 74 S.Ct. 866, 98 L. Ed. 1136 (1954); Levy v. Industrial Finance Co., 16 F.2d 769, 771 (4th Cir. 1927), aff'd. 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572 (1928).

The Government's brief characterizes the element of obtaining as involving a "transfer *to the defendant* of title or possession of property." (Emphasis supplied). Read literally, this formulation appears to be unnecessarily restrictive.

of our observation in Gilmore v. United States, 106 U.S.App.D.C. 344, 347, 273 F.2d 79, 82 (1959), that the defrauded party's belief in the validity of the check must have been "a contributing influence sufficient to turn the scale * * * [i. e.] that the alleged fraud would not have been accomplished but for the misrepresentations made."

As noted above, the salesman who received the check testified that he did not know either the girl or appellant, and that he authorized the television set to be taken away in reliance upon the check. Under cross-examination, he stated that he had heard conversation between appellant and the girl to the effect that appellant was buying the set for the girl, but he was unable to say with certainty whose set it was going to be. If this had been all the testimony on the matter, it is conceivable, albeit improbable, that the jury might have concluded that the salesman had in fact relied on the girl's credit rather than on the check in releasing the set. In such case, the requested charge would have been proper.

But, as also noted above, our concern is with the degree to which the defense testimony took this issue out of the realm of permissible speculation. The girl was the only witness for the defense, and on her direct examination this colloquy occurred:

"Q. Now, who was going to get that television, you or Mr. Ciullo, do you recall? A. The television was for me.

"Q. I see. Now, what happened when you went inside the store? A. I looked for a television that I liked.

"Q. Did you find one that you liked? A. Yes.

"Q. Will you describe it, please? A. It's a Zenith.

"Q. Do you recall what the price on it was? A. $210.39.

"Q. Now, how old were you at that time? A. Twenty.

"Q. And were you going to pay for the set at that time? A. Yes.

"Q. And did you say anything to an employee of Dalmo's about buying that set? A. Yes.

"Q. And as a result of that discussion did you decide to pay for that set yourself right then?

"Mr. Titus: Objection, Your Honor. These are all leading questions.

"The Court: You are leading the witness a little bit. Of course, both counsel have been doing that, but try to rephrase your question, will you, since objections have been made?

"By Mr. Jones:

"Q. Now, what happened after you picked out a set that you liked? What did you do? A. Sal wrote the check for it.

"Q. Why? A. Because I was under age.

"Q. And what difference did it make that you were under age? A. There was some kind of a law that if you are under 21 you can't purchase anything.

"The Court: You mean you can't enter into a contract to purchase it on credit.

"The Witness: Yes.

"By Mr. Jones:

"Q. And that is why Mr. Ciullo wrote the check? A. Yes."

We can read this testimony as consistent only with the fact of reliance by the salesman upon the check as his warrant for letting the set leave the possession of his employer. It seems to us that the girl herself has said on the record that, although she tried to buy the set on her own credit, she was unable to do so; and, consequently, appellant enabled this particular shopping mission to end happily by giving his own check. The inference can only be that the giving of the check was the *sine qua non* of obtaining immediate possession of the set. The defense, in other words, has supplied independent evidence of its own that the salesman refused to rely on anything other than the check. No

check, no television—this was the barrier which we understand the girl to say she encountered, and we do not believe that a jury could have rationally viewed the matter in any different light.

Affirmed.