**Ricardo V. CLEMONS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13211.**

District of Columbia Court of Appeals.

Argued Jan. 24, 1979.

Decided April 9, 1979.

---

Gerson Simon, Washington, D. C., appointed by the court, for appellant.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Sil-bert, U. S. Atty., John A. Terry, Peter E. George and William J. Bowman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and MACK, Associate Judges.

PER CURIAM:

A one-count misdemeanor information charged appellant with false pretenses. D.C.Code 1973, § 22–1301. A jury trial led to his conviction and to a suspended sentence and twenty-four months' probation.[1] On appeal, appellant argues that there was a fatal variance between the original information and the offense proved at trial and, alternatively, that the government failed to prove an essential element of the offense of false pretenses. We affirm.

The facts in this case are essentially undisputed. Appellant was employed by W. & J. Sloane, Inc. for approximately two weeks. He was then terminated and was told that he would receive his paycheck by mail. The check did not reach appellant for several days. He telephoned Sloane and a replacement check was arranged. Appellant picked up the replacement check on September 13, and cashed it on September 14. Sloane placed a stop payment order on the original check at the time it issued the replacement check. It is not clear whether appellant was explicitly told of the stop payment order, but it is clear that he was told to return the original check to Sloane if it should ever reach him.

On September 16, appellant, instead, took the original check which he had obtained in some unexplained way, to Rose's Liquor Store to cash. Mr. Rose testified that the check looked valid, that appellant said nothing to indicate it was not valid, and that appellant was accompanied by his sister whom Mr. Rose knew quite well. Mr. Rose, therefore, cashed the check for its face value of $108. He deposited the check with his

---

1. The trial judge suspended imposition of sentence pending probation. This was error. *See* *Schwasta v. United States*, D.C.App., 392 A.2d 1071, 1077 (1978). The trial judge should have imposed a defined sentence and then suspended its execution if he felt that appropriate. D.C.Code 1973, § 16–710.

bank, but it was returned to him marked "payment stopped." Mr. Rose then asked appellant's sister and father to speak to appellant about the check. By the trial date, however, he had neither heard from appellant nor recovered any money from Sloane.

After the original check was returned to him, Mr. Rose complained to the police and, after investigation, this information was filed in the Superior Court:

The United States Attorney for the District of Columbia informs the Court that within the District of Columbia: Ricardo Vaughan Clemons [identification numbers and address deleted] did on or about September 16, 1976 commit the crime or crimes indicated herein and identified by an X-mark or X-marks:

FALSE PRETENSES—in that, with intent to defraud, he falsely represented, knowing the representations to be false, that a check was negotiable when in fact payment had been stopped on said check none of which was true; such false representations being made to: Joseph E. Rose, who, relying on them as true and believing them, delivered and caused to be delivered to the above defendant property of value in violation of Section 22–1301, District of Columbia Code.

Appellant now argues that the check actually was a negotiable instrument under the terms of the Uniform Commercial Code [U.C.C.], D.C.Code 1973, § 28:3–104. Thus, so appellant contends, the essential element of false representation was not present since he represented no more than the truth when he led Mr. Rose to believe that the check was negotiable. Appellant's second, and related, argument is that the information filed failed to give fair warning of what would be proved at trial. He contends that the trial court's interpretation of "negotiable" expanded the legal meaning of the word so greatly as to effect a fatal variance from the original information.

▮▮▮ The jury found all of the elements of false pretenses proved beyond reasonable doubt by the account of appellant's actions which emerged at trial. These elements are false representation, knowledge of the falsity, specific intent to defraud, reliance by the victim, and the obtaining of valuable property. *Marganella v. United States,* D.C.App., 268 A.2d 803 (1970). Appellant challenges the first of these, claiming that his representations to Mr. Rose were actually not false.[2]

▮▮▮ This argument fails because the testimony at trial did not show, or even suggest, that appellant told Mr. Rose he would be given a "negotiable instrument." It showed that he presented a check for cash. The presentation of that check was an implied representation of its validity and of appellant's ability to assign the right to present it for payment. *See Ciullo v. United States,* 117 U.S.App.D.C. 31, 325 F.2d 227 (1963); *Gilmore v. United States,* 106 U.S.App.D.C. 344, 273 F.2d 79 (1959). The evidence supports the jury's finding that this was false.

Furthermore, even if appellant had assured Mr. Rose that the check was "negotiable"—a word which entered this case only at the time the information was prepared— we would have to consider that word's meaning in the context of this transaction. Here its obvious purpose would have been to persuade Mr. Rose that he could recover the value of the cash given to appellant simply by endorsing the check and presenting it to his bank. Clearly that, too, would have been a false representation.

▮▮▮ Appellant's reliance of the U.C.C. definitions of negotiable instruments and of holders in due course might be relevant if appellant had used those terms in an at-

---

**2.** Appellant may also be contending that Mr. Rose, as holder in due course, with ultimate recovery rights through legal action suffered no pecuniary loss by relying on appellant. This is no defense to criminal liability for false pretenses. *See Fowler v. United States,* D.C.App., 374 A.2d 856, 859 (1977); *Gilmore v. United*

*States,* 106 U.S.App.D.C. 344, 347, 273 F.2d 79, 82 (1959); W. LaFave & A. Scott, Criminal Law 669 (1972). Furthermore, Mr. Rose suffered a clear detriment through inconvenience when his check was returned and his pragmatic decision not to pursue legal action against Sloane suggests he suffered an actual financial loss.

tempt to communicate the actual value of the check to Mr. Rose; they might for example show that a misunderstanding rather than a misrepresentation had taken place. But the evidence does not even suggest that that is what happened here. Given the transaction that the jury found occurred, these commercial terms of art are irrelevant to the issue of appellant's criminal liability.

Appellant's second argument is that the information filed in this case was fatally flawed in that it described as not negotiable a check that actually was a negotiable instrument. It cannot be denied that the information was inartfully drawn. However, relying on the policy requiring early challenges to an information, on the purposes of a criminal information, and on a common sense reading of this information, we hold that in the absence of an objection prior to appeal, the flaws in the information were not so prejudicial as to require reversal.

A criminal information is easily amended at any time before a verdict or finding. *See* Super.Ct.Cr.R. 7(e). The trial court may grant a continuance or other relief if the defendant is prejudiced by lack of fair notice or by surprise. Thus alleged defects in the information can be easily cured or justified when they are raised before a verdict; when raised on appeal, they can be corrected only through a new trial. From this springs the rule that informations, like indictments, attacked for the first time on appeal, should be dismissed only if a miscarriage of justice is apparent or if the information failed to give the defendant fair notice of the charges against him. *Hall v. United States*, D.C.App., 343 A.2d 35, 37 (1975).

The purposes of a criminal information are to notify the defendant of the charges he must meet at trial and to allow him to avoid dangers of double jeopardy. It should be given a common sense reading. *Hackney v. United States*, D.C.App., 389 A.2d 1336, 1340 (1978). The information lodged against appellant did give fair notice of the gravamen of the charges he would

face. It described clearly the date of the act alleged, named the victim and cited the appropriate statute. In describing the alleged offense, the information specifically described the check's flaw: "[I]n fact payment had been stopped." It may have been technically inaccurate to describe a check on which payment had been stopped as not "negotiable" but such language is not outside of the ordinary usage of the term, particularly in the transaction that did occur.

We can trace no prejudicial impact to the error in this information. Appellant could, by motion, have had the charge reworded at any time before the verdict. Nothing in the record indicates that appellant's defense suffered through any misunderstanding of the information. And all of the elements necessary to show a violation of the appropriate statute were proven to the satisfaction of the jury.

"Courts generally . . . dismiss challenges based on technical inaccuracies or omissions, if the indictment adequately informs the defendant of pending charges." *Id.* at 1341. After reviewing this record, we see no reason not to apply that rule and allow this information to stand.

Accordingly, the judgment on appeal is affirmed and the case is remanded for resentencing.

*So ordered.*