## Michael E. SANDWICK, Appellant,

### v.

## DISTRICT OF COLUMBIA, Appellee.

### No. 10–CT–111.

District of Columbia Court of Appeals.

Submitted March 30, 2011.

Decided June 23, 2011.

Marc L. Resnick was on the brief for appellant.

Peter J. Nickles, Acting Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Solicitor General, and Sidney R. Bixler, Assistant Attorney General, were on the brief for appellee.

Before BLACKBURNE–RIGSBY and OBERLY, Associate Judges, and STEADMAN, Senior Judge.

OBERLY, Associate Judge:

Michael Sandwick was charged in May 2009 with leaving the scene of an accident involving personal injuries, a violation of D.C.Code § 50–2201.05(a)(2) (2009 Supp.). He was convicted after a bench trial in January 2010, and now makes four arguments on appeal: (1) the trial court applied the wrong mental state under the statute; (2) the charging document was defective because it failed to allege a culpable mental state; (3) the trial court should have dismissed the charge because the government failed to preserve evidence; and (4) there was insufficient evidence to support his conviction. Because we find none of Sandwick's arguments persuasive, we affirm.

## I. Facts

Norman Shore testified that he was struck by a blue pickup truck as he attempted to cross 16th Street in Northwest Washington, D.C. on the night of January 19, 2009, and was taken to the hospital by ambulance, where he was treated for cuts and abrasions. Joanna Lahaie testified that she was standing ten feet away from where the accident occurred, and saw "a pickup truck driving down 16th Street . . . collide with a gentleman who [got airborne and] fell down, and at that point the car slowed, but then continued on." Sandwick testified in his own defense and claimed that his "driver's window just shattered" while he was driving south on 16th Street, and that he had no idea what had happened but assumed that it was "[s]ome sort of act of vandalism." According to Sandwick, he "slowed down and looked around," but did not see anything. He claimed that he was unable to stop immediately after the impact of the glass window shattering because of traffic. Sandwick's wife, Melina Papadopoulos, testified that she was a passenger in the truck that night, and that their truck window "just

blew in." She claimed that they stopped and looked around after the accident, but did not see anything. The trial court credited the testimony of the government's witnesses, found Sandwick guilty, and sentenced him to, *inter alia*, 120 days in prison with all but two weekends suspended.

## II. Discussion

We review Sandwick's first argument, that the trial court applied the wrong standard for the mental state required under the statute, *de novo*. *See Banks v. United States*, 955 A.2d 709, 711 (D.C.2008). D.C.Code § 50–2201.05(a)(1) makes it a crime for "[a]ny person operating a vehicle, who shall injure any person therewith ... [to] fail to stop and give assistance, together with his name, place of residence, including street and number, and the name and address of the owner of the vehicle so operated, to the person so injured...." The statute is silent with respect to *mens rea*, and Sandwick argues that the government must prove that he knew two things: "(1) ... that he had been involved in an accident or collision[,] and (2) that a person had been physically injured in the collision."

■ We agree that a mental element must be read into the statute, which " 'imposes upon the driver of a vehicle a positive, affirmative course of action; it specifically designates several acts following the accident which the operator of the vehicle must do to avoid the statutory penalty. It is inconceivable that the legislature intended that punishment would be imposed for failure to follow the course of conduct outlined, if the operator of the vehicle was ignorant of the happening of an accident.' " *State v. Vela*, 100 Wash.2d 636, 673 P.2d 185, 187 (1983) (quoting *State v. Martin*, 73 Wash.2d 616, 440 P.2d 429, 436 (1968)). Clearly, a person must have knowledge that a collision has occurred to be convicted of violating the statute. However, we reject Sandwick's argument that § 50–2201.05(a)(1) also requires knowledge of personal injury, because "such a requirement would practically destroy the purpose of the statute." *Vela*, 673 P.2d at 188. The rule Sandwick urges would encourage "a driver to remain ignorant of the actual consequences of [an] accident. If he does not stop to investigate, he will likely not have knowledge whether anyone was injured.... Such a result would reward a motorist who deliberately remains ignorant of the results of his accident." *Id.* at 188–89. Accordingly, we hold that a driver who knows that he or she has been involved in a collision in which there is a possibility that another person has been injured has a duty under D.C.Code § 50–2201.05(a)(1) to stop and investigate whether injury actually occurred.

■ In any event, Sandwick's argument fails because the trial court found that he *did* have knowledge of both the collision and Shore's injuries. The court found that the impact of the collision "would be nearly impossible for [the people in the truck] to miss ... given that the impact was such that the victim ... was thrown into the air three feet." The court "fully credit[ed] the [eyewitness] testimony ... [that] the car in fact did slow down after the impact meaning that the people in the car, at least the driver[,] knew that an impact ... had occurred." The trial court did not credit Sandwick's testimony that after the impact "he was trying to figure out what happened[,] [because] [a]nybody trying to figure out what happened could easily see somebody lying in the street as a result of the impact." The trial judge found that "the evidence [wa]s quite compelling," and she "fully credit[ed] the testimony of the government's witnesses and dr[e]w the compelling inference from that testimony that [Sandwick] did know that he had struck a pedestrian at that time[,] if not at

that moment then immediately afterwards." Thus, having found that Sandwick did in fact know that he had struck Shore, the trial court did not misapply the statute's knowledge requirement.

■ Sandwick's second argument, made for the first time on appeal, is that his rights were violated because the charging document failed to allege that he knew of the accident and resulting injury before he left the scene. Informations attacked for the first time on appeal are "liberally construed in favor of validity," *United States v. Bradford,* 482 A.2d 430, 433 (D.C. 1984) (quotation marks omitted), and "should be dismissed only if a miscarriage of justice is apparent or if the information failed to give the defendant fair notice of the charges against him." *Clemons v. United States,* 400 A.2d 1048, 1051 (D.C. 1979). "As a constitutional matter, an indictment must contain all the elements of the offenses charged and sufficiently apprise the defendant of the charges so that he or she can prepare to meet them. Further, it must be clear enough, when coupled with the record of the proceedings, to preclude double jeopardy; *i.e.,* [t]he nature of the acquittal or conviction based on the indictment must be sufficiently clear to bar future prosecution for the same crime." *Hsu v. United States,* 392 A.2d 972, 976–77 (D.C.1978) (citations omitted).

■ In this case, the information stated that on January 19, 2009, Sandwick operated a vehicle and, having injured someone, failed to stop and provide assistance and his information, in violation of D.C.Code § 50–2201.05(a)(1). This was sufficient to give Sandwick fair notice of the charge against him: It described the date of the accident, alleged the basic facts, and was worded in the language of the statute, which we have held is sufficient. *See, e.g., Hall v. United States,* 343 A.2d 35, 37–38 (D.C.1975). Furthermore, there is no risk of double jeopardy because Sandwick can "rely on the entire record in any future proceeding." *Bradford,* 482 A.2d at 434. Finally, Sandwick was not prejudiced by the information's failure to mention knowledge, because his defense at trial focused primarily on his lack of knowledge of the collision with Shore. *See, e.g., Clemons,* 400 A.2d at 1051 (finding no prejudice where "[n]othing in the record indicates that appellant's defense suffered through any misunderstanding of the information").

■ Sandwick next argues that the trial court should have dismissed the charge against him because the government negligently failed to preserve photographs of his truck, in violation of Superior Court Criminal Rule 16.[1] Although the government "has a general duty to preserve discoverable evidence under Super. Ct.Crim. R. 16(a)(1)( [C] )," *Bean v. United States,* 17 A.3d 635, 638 (D.C.2011), Sandwick's claim fails under plain error review because at trial he did not challenge the government's failure to preserve the photographs, nor did he ask the trial court to impose Rule 16 sanctions. *Cf. Sheffield v. United States,* 397 A.2d 963, 968 (D.C. 1979) ("Where defense counsel ... does not request the imposition of sanctions against the government for failing to preserve discoverable material, the trial court's failure to [s]ua sponte impose a sanction will only be reversed upon a finding of plain error.").

■ At trial, Metropolitan Police Department Officer Bridgette King testified

---

1. Superior Court Criminal Rule 16(a)(1)(C) states that "[u]pon request of the defendant the prosecutor shall permit the defendant to inspect and copy ... photographs ... which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant."

that she received Sandwick's information after running a license plate number provided by an eyewitness to the accident. Sandwick met with her at the station, provided a statement, and allowed her to photograph his truck. Officer King testified on cross-examination that she attached the photos to her case file, but that they were no longer attached and she did not know where they were. There was no dispute at trial about the condition of the truck at the time that Officer King photographed it, and although on appeal Sandwick claims that the photographs were of "increased" importance, he did not object to their absence or make any "request that the trial court impose ... sanctions or undertake any corrective measures." *Id.* The trial court did not plainly err in declining to sanction the government *sua sponte*, because a decision to impose Rule 16 sanctions is left to the trial court's discretion, meaning that even if Sandwick had objected to the government's failure to produce the photographs, " 'Rule 16 does not require a court to impose sanctions against the nondisclosing party. Rather, in considering the imposition of sanctions, the court must consider a number of factors, including the reason for nondisclosure, the impact of nondisclosure, and the impact of the proposed sanction on the administration of justice.' " *Yoon v. United States,* 594 A.2d 1056, 1061 (D.C.1991) (quoting *Wiggins v. United States,* 521 A.2d 1146, 1148 (D.C.1987)). Given that in this case the photographs simply appear to have been lost, and there was no dispute about what they portrayed, the trial judge would have been well within the bounds of her discretion in declining to sanction the government. Accordingly, we cannot say that the trial judge "plainly erred" by not doing so, especially when Sandwick did not ask her to.

■■■■ Sandwick's final claim is that the evidence was insufficient to support his conviction. When reviewing a claim of insufficient evidence, "this court views the evidence in the light most favorable to the government, recognizing that it is within the province of the fact finder to weigh the evidence, to determine the credibility of the witnesses, and to draw reasonable inferences from the evidence." *Chemalali v. District of Columbia,* 655 A.2d 1226, 1227 (D.C.1995). When reviewing a bench trial, we "will not reverse unless an appellant has established that the trial court's factual findings are plainly wrong or without evidence to support [them]." *Mattete v. United States,* 902 A.2d 113, 115 (D.C. 2006) (alteration in original) (quotation marks omitted).

The trial court credited the government's witnesses, whose testimony established that Sandwick's truck struck Shore while Shore was crossing 16th Street, that Shore was thrown three feet into the air and landed in the roadway, and that Sandwick's truck slowed down or stopped immediately after the impact, but then drove away. These factual findings were not plainly wrong or without evidentiary support, and they are sufficient to establish a violation of D.C.Code § 50–2201.05(a)(1). Although Sandwick and his wife presented a different picture of that evening's events, we "must defer to the trial court's determinations of credibility." *Chemalali,* 655 A.2d at 1228.

*Affirmed.*