*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CF-0163


RODERICK CHEW, APPELLANT,

V.

UNITED STATES, APPELLEE.


Appeal from the Superior Court
of the District of Columbia
(2020-CF2-008233)

(Hon. Michael Ryan, Trial Judge)

(Submitted February 28, 2023            Decided May 2, 2024)

*Keith B. Lofland* was on the brief for appellant.

*Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *Meredith Mayer-Dempsey*, *Robert Platt*, and *John P. Mannarino*, Assistant United States Attorneys, were on the brief for appellee.

Before EASTERLY, MCLEESE, and SHANKER, *Associate Judges*.

Opinion for the court by Associate Judge EASTERLY.

Concurring opinion by Associate Judge EASTERLY at page 19.

EASTERLY, *Associate Judge*: Roderick Chew appeals from his convictions for

multiple gun-related offenses. Mr. Chew argues that his convictions for possession

of an unregistered firearm ("UF") and carrying a pistol without a license ("CPWL") should be vacated because both the District's firearm registration statute, D.C. Code § 7-2502.01(a), and firearm licensing statute, D.C. Code § 22-4506(a), violate the Second Amendment as interpreted by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Additionally, he challenges his conviction for unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year ("UP"), D.C. Code § 22-4503(a)(1), (b)(1), on the ground that the evidence against him was legally insufficient. Finally, and in the alternative, Mr. Chew argues that his convictions for CPWL and UF should merge with his conviction for UP.

Although Mr. Chew did not raise his constitutional claims in Superior Court, we assume they are reviewable for plain error. We conclude that Mr. Chew cannot prevail under the test for plain error because he has failed to show any "clear and obvious" constitutional defect in these statutes that could affect his rights. We thus reject his constitutional claims. His sufficiency and merger claims likewise fail. Accordingly, we affirm.

## I. Second Amendment Challenges

Mr. Chew argues that, following the Supreme Court's decision in *Bruen*, the District's firearm registration and license to carry statutes, D.C. Code

§§ 7-2502.01(a) and 22-4506(a), facially violate the Second Amendment, and this court should, therefore, vacate his convictions for UP and CPWL. He claims that these statutes vest the Metropolitan Police Department ("MPD") with impermissible discretion to restrict individuals' Second Amendment rights and, as a result, the trial court erred by failing to dismiss the charges against him.

As an initial matter, the government argues that Mr. Chew "waived" his constitutional challenges by failing to raise them before the Superior Court in compliance with Super. Ct. Crim. R. 12(b)(3)(B)(v). The government claims that, as a result of this waiver, Mr. Chew cannot raise his constitutional claims for the first time on appeal absent a showing of good cause. *See* Super. Ct. Crim. R. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection or request if the party shows good cause.").

We need not decide whether, by failing to preserve his constitutional claims in the trial court, Mr. Chew waived and rendered these claims unreviewable on appeal absent a showing of good cause or, as is generally the case for unpreserved arguments, he merely "forfeited his right to have this court consider on direct appeal the 'merits' of [these] claim[s] under the court's regular standard of review" and they remain reviewable by this court subject to the strictures of plain error review.

*Allen v. United States*, 495 A.2d 1145, 1151 & n.11 (D.C. 1985) (en banc) (footnote omitted); *accord Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc); *see also United States v. Olano*, 507 U.S. 725, 733-34 (1993). Even if we assume without deciding that Mr. Chew's claims are reviewable for plain error,[1] *but see post* (Easterly, J., concurring), Mr. Chew fails to make such a showing.

**A.    Facial Constitutionality of the District's Firearm Registration Statute, D.C. Code § 7-2502.01(a)**

Mr. Chew argues that a portion of the District's firearm registration statute, D.C. Code § 7-2502.01(a), is facially unconstitutional because it gives the MPD impermissible discretion to decide whether to issue a firearm registration certificate to otherwise qualified individuals. Section 7-2502.01(a) provides that the District "may . . . issue[]" a registration certificate to individuals who meet the requirements of the act. Mr. Chew contends that by using the word "may" instead of "must" or "shall," D.C. Code § 7-2502.01(a) gives the District authority to deny firearm registration certificates to otherwise qualified individuals, thereby violating the

---

[1] To succeed on plain error review, an appellant must show that (1) there is error, (2) such error is "plain," meaning "clear" or "obvious," by the time of appellate review; (3) the error affected appellant's "substantial rights"; and (4) the error seriously affected "the fairness, integrity or public reputation of [the] judicial proceedings." *In re Taylor*, 73 A.3d 85, 96 (D.C. 2013) (internal quotation marks omitted).

Second Amendment.

The discretionary language Mr. Chew attacks, however, did not impact his ability to receive a firearm registration certificate or his conviction for UF. While the statute provides that the District "may . . . issue[]" a registration certificate to individuals who meet the requirements of the act, D.C. Code § 7-2502.01(a)(5), it also mandates that "[n]o registration certificate shall be issued to any person" who has "been convicted of a weapons offense . . . or a felony," D.C. Code § 7-2502.03(a)(2). At trial, Mr. Chew stipulated that, prior to the alleged offense, he had been convicted of a felony. As a result, Mr. Chew was not eligible for a firearm registration certificate and the District had no discretion under D.C. Code § 7-2502.01(a) to issue him one.

Because Mr. Chew was not eligible for a firearm registration certificate under D.C. Code § 7-2502.01(a), it is not clear that he can bring a facial challenge to the statute and thus the trial court's failure to sua sponte consider his Second Amendment claim cannot constitute plain error. Mr. Chew asserts that his prior felony conviction "does not affect the analysis of the overall constitutionality of the District's firearms licensing law[]." But, as we have previously explained, "except in limited circumstances . . . , an appellant may not challenge a statute by arguing that it could not be constitutionally applied to other defendants, differently situated."

*Gamble v. United States*, 30 A.3d 161, 166 (D.C. 2011); *see also Sims v. United States*, 963 A.2d 147, 150 n.2 (D.C. 2008) ("Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)); *Sabri v. United States*, 541 U.S. 600, 609-10 (2004) (explaining that, outside of specific contexts, such as the First Amendment, the Supreme Court has "discouraged" facial overbreadth challenges that assert a "law would be unconstitutionally applied to different parties and different circumstances from those at hand" because such challenges conflict with requirements for standing). Mr. Chew is not otherwise eligible for a firearm registration certificate. His claim that D.C. Code § 7-2502.01(a)'s discretionary language violates the Second Amendment therefore constitutes a challenge to the law based only on the application of the statute to "other defendants, differently situated"—i.e., those who are eligible and meet all other requirements of the act. *See Gamble*, 30 A.3d at 166. Given that it is not clear Mr. Chew can bring this facial challenge to begin with, the trial court's failure to consider sua sponte the constitutionality of the discretionary language in D.C. Code § 7-2502.01(a) did not constitute plain error.

**B.**     **Facial Constitutionality of the District's Firearms Licensing statute,**

**D.C. Code § 22-4506(a)**

Mr. Chew also argues that the District's licensing scheme for the public carry of firearms in D.C. Code § 22-4506(a) facially violates the Second Amendment. Section 22-4504(a) prohibits a person from "carry[ing] within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law." A separate provision, D.C. Code § 22-4506(a), sets out when a person is eligible for a license. Under D.C. Code § 22-4506(a), as written, "[t]he Chief of the Metropolitan Police Department ('Chief') may . . . issue a license to such person to carry a pistol concealed upon his or her person within the District of Columbia . . . if it appears [(1)] that the applicant has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol, and [(2)] that he or she is a suitable person to be so licensed." Mr. Chew, citing *Bruen*, 597 U.S. at 11, 71 (holding New York's licensing regime for the public carrying of handguns, which required an individual to prove that they had "proper cause" to carry a firearm by demonstrating "a special need for self-protection," violated the Second and Fourteenth Amendments), challenges both the "proper reason" requirement and the "may issue" provision. Mr. Chew argues that because these aspects of the licensing statute render it unconstitutional, this court must vacate his conviction for CPWL under D.C. Code

§ 22-4504(a).[2] We conclude that the trial court did not plainly err in failing to sua sponte consider Mr. Chew's Second Amendment challenge to this conviction.

Mr. Chew argues, first, that his conviction for CPWL should be vacated because the "proper reason" provision of D.C. Code § 22-4506(a) violates the Second Amendment. But this statutory licensing requirement has been permanently enjoined since the D.C. Circuit's decision in *Wrenn v. District of Columbia*, 864 F.3d 650, 666-67 (D.C. Cir. 2017). Following the D.C. Circuit's decision in *Wrenn*, D.C. Code § 22-4506(a) in effect reads that the Chief of the MPD "may . . . issue a license to such person to carry a pistol concealed upon his or her person, if . . . he or she is a suitable person to be so licensed." *Dubose v. United States*, 213 A.3d 599, 604 (D.C. 2019) (recognizing that non-enjoined portions of D.C. Code § 22-4506(a) can be severed and remain operable). Because D.C. Code § 22-4506(a) did not require individuals to demonstrate "proper reason" to obtain a license to carry a firearm in public at the time of Mr. Chew's 2020 arrest or 2021 conviction, we cannot say that the "proper reason" provision affected Mr. Chew's substantial rights. *See Malloy v. United States*, 186 A.3d 802, 815-16 (D.C. 2018) (explaining that to

---

[2] Although Mr. Chew primarily cites to D.C. Code § 22-4504(a), which prohibits a person from carrying a firearm without a license, we understand his argument to be that the underlying licensing scheme, codified at D.C. Code § 22-4506(a), is unconstitutional.

affect a person's substantial rights under the test for plain error, an error must "have had a substantial and injurious effect or influence in determining the verdict") (internal quotation marks omitted).

Mr. Chew also argues that D.C. Code § 22-4506(a) violates the Second Amendment because, following the Supreme Court's decision in *Bruen*, any firearm licensing scheme that states authorities "*may* issue" a license to otherwise qualified individuals is "presumptively invalid." But Mr. Chew is not an otherwise qualified individual. Under 24 D.C.M.R. § 2335.1(a), a person is only "suitable"—and therefore eligible—to obtain a license to carry a firearm if they can "[m]eet[] all of the requirements" to register a firearm. As discussed *supra* Part I.A, Mr. Chew is ineligible to register a firearm because of his prior felony conviction. Any discretion that the "may issue" language in D.C. Code § 22-4506(a) confers on District authorities thus does not extend to Mr. Chew and, as a result, it is not clear that he may bring this facial challenge, *see Gamble*, 30 A.3d at 166, or that the trial court's failure to consider sua sponte the constitutionality of the discretionary language in D.C. Code § 22-4506(a) constitutes plain error.[3]

---

[3] Mr. Chew argues, in addition, that if D.C. Code § 7-2502.01(a) (requiring firearms to be registered) violates the Second Amendment and is unenforceable, then D.C. Code § 22-4504(a)(2) (CPWL) is also unenforceable because D.C. Code

## II.     Sufficiency of the Evidence

In addition to his Second Amendment challenges, Mr. Chew argues that the evidence was insufficient to prove beyond a reasonable doubt that he unlawfully possessed a firearm under D.C. Code § 22-4503(a)(1).  We disagree and conclude that the evidence was legally sufficient.

### A.     Factual Background

At trial, the government presented evidence that, at around 4:00 pm on October 23, 2020, undercover MPD officers monitoring the area near 45th Street, NE, and Edson Place, NE, observed Mr. Chew drive up in a silver SUV.  A woman wearing pink was seated in the passenger seat.  Mr. Chew exited the SUV, interacted with an individual, and exchanged money for an object, leading the officers to suspect he had engaged in a "hand-to-hand drug sale."[4]  As Mr. Chew drove away,

---

§ 22-4504(a)(2) functions as an "enhanced punishment" for a violation of D.C. Code § 7-2502.01(a).

As explained above, we decline, on plain error review, to reach the constitutionality of D.C. Code § 7-2502.01(a) because it is not clear that Mr. Chew can litigate this question.  *See supra* Part I.A.  In any event, as we explain, *see infra* Part III, D.C. Code §§ 7-2502.01(a) and 22-4504(a)(2) are separate offenses with separate elements—requiring a lack of registration for a gun and the lack of a license to possess a gun, respectively.  The latter is not an enhanced penalty for the former.

[4] The parties later stipulated that Mr. Chew had received an amount of marijuana that was legal for him to possess in the District.

the undercover officers broadcast a lookout for him and other officers began following him, but Mr. Chew drove off at "a high . . . speed."

As Mr. Chew drove, he passed a private ambulance that was stationary. The ambulance driver "witnessed a person fleeing from the police" in a silver SUV. While the SUV was "[a]bout one or two car lengths" away from the ambulance driver's location, the ambulance driver saw the person driving the SUV "reach over the passenger" (a "person wearing pink"), and "throw a gun out [of] the passenger side window." The ambulance driver testified that he "clearly s[aw]" the gun "as it was flying," and saw it land on "a patch of grass by the sidewalk." When he walked over to where he had seen the gun land, he found a "firearm . . . near the sidewalk." The ambulance driver flagged down a police officer. The police recovered the pistol from the ground, and then canvassed the area until they located and stopped Mr. Chew's SUV. When they stopped the vehicle, the woman wearing pink was driving and Mr. Chew was in the passenger seat. The officer who saw Mr. Chew engage in the suspected drug transaction identified him as the same individual he had seen earlier.

Following Mr. Chew's arrest, a police officer swabbed the firearm for fingerprints, but was unable to recover any. He also swabbed the firearm for DNA. A DNA expert witness for the government tested the DNA swab from the firearm

against a DNA sample from Mr. Chew. The expert testified that the firearm contained DNA from a minimum of four individuals, at least one of whom was male. She further opined that obtaining the DNA mixture she found on the firearm was "17.3 billion times more likely" if some of the DNA "originated from [Mr.] Chew and three unknown unrelated individuals versus . . . if that same DNA profile originated from four unknown unrelated individuals."

The defense, cross-examining the government's witnesses, established that Mr. Chew was driving quickly when the ambulance driver saw him pass by and the ambulance driver could not remember if the windows on the SUV were tinted; the ambulance driver's testimony that police officers were following Mr. Chew's vehicle "very close[ly]" when he threw the gun did not align with the officers' testimony that they were not following Mr. Chew at the time (and no officer saw a gun thrown out of the SUV); and the DNA expert had not tested the swab from the firearm against the DNA of the passenger in Mr. Chew's vehicle.

Mr. Chew stipulated that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year and that he knew he had been convicted of that crime. Weighing the evidence, the jury acquitted Mr. Chew of unlawful possession of ammunition, but found him guilty of one count of UP, one count of CPWL, and one count of UF.

**B.     Analysis**

Mr. Chew challenges the sufficiency of the evidence supporting his conviction for UP. "When assessing whether the evidence at trial sufficiently supports a conviction, we view the evidence in the light most favorable to the verdict and defer to the fact-finder's credibility determinations." *Hernandez v. United States*, 129 A.3d 914, 918 (D.C. 2016). "The evidence is sufficient if any rational fact-finder could have found the elements of the crime beyond a reasonable doubt." *Id.*

Because Mr. Chew stipulated to knowing he had a prior felony conviction, all the government had to prove to substantiate his guilt of UP was that Mr. Chew had possessed a firearm. *Washington v. United States*, 53 A.3d 307, 309 (D.C. 2012) (explaining that to prove UP, the government must show that a defendant (1) "had been convicted of a felony," and (2) "owned or kept a firearm" or "had a firearm in his possession or under his control"). The government could prove possession by demonstrating that Mr. Chew had either actual or constructive possession of the firearm. *Taylor v. United States*, 662 A.2d 1368, 1372 (D.C. 1995). Constructive possession requires proof that Mr. Chew (1) knew of the firearm's presence, (2) "had the power to exercise dominion and control over it," and (3) "intended to exercise dominion and control over it." *Schools v. United States*, 84 A.3d 503,

507-08 (D.C. 2013) (internal quotation marks omitted). The government may prove constructive possession through either direct or circumstantial evidence. *Rivas v. United States*, 783 A.2d 125, 129 (D.C. 2001) (en banc).

Viewed in the light most favorable to the verdict, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Mr. Chew possessed a firearm. Notwithstanding the defense's efforts to poke holes in the government's case, *see supra*, there was still ample evidence to support the conclusion that Mr. Chew knew the firearm was in the vehicle, had the power to exercise dominion and control over it, and intended to do so. In particular, an eyewitness testified to seeing Mr. Chew throw the firearm out of the vehicle he was driving, police recovered a firearm from the spot where the eyewitness saw the firearm thrown, and DNA evidence strongly linked the recovered firearm to Mr. Chew.

Mr. Chew compares his case to *Proctor v. United States*, 172 A.3d 396 (D.C. 2017), and *Curry v. United States*, 520 A.2d 255 (D.C. 1987), in which we observed that the presence of others where contraband is found may weaken any inferences that can be drawn from evidence that police found an illegal item in proximity to a defendant or their personal items. *Proctor*, 172 A.3d at 405; *Curry*, 520 A.2d at 264. Mr. Chew argues that, given that he was with another person in the vehicle and the ambulance driver's testimony was of "limit[ed] . . . accuracy," "the evidence at least

as strongly supports the theory that the passenger in the vehicle threw the recovered gun from the window."

The facts of *Proctor* and *Curry* make the comparison inapt. In *Proctor*, officers stopped Mr. Proctor and found marijuana in his car, then searched his house where four adults (but not Mr. Proctor) were present and, dumping out the contents of a CVS bag found under a mattress, found a firearm and mail addressed to Mr. Proctor. 172 A.3d at 399-400 & n.6. This court concluded that the evidence was insufficient to convict Mr. Proctor of firearm possession because: "no government witness . . . testified that Mr. Proctor had been seen previously with the gun"; another person also occupied the bedroom where the firearm was found and testified that *she* had purchased the gun; Mr. Proctor was not at home when the gun was found but multiple other people were; there was no testimony about whether the officer had looked to see what was on the floor before dumping the bag out; and there was no evidence linking Mr. Proctor to marijuana and cash found at the home or the marijuana found in the car he was driving. *Id.* at 406-07. In *Curry*, this court likewise concluded the evidence was insufficient to convict Ms. Curry of firearm possession where the firearm was discovered in a nightstand among her clothes but in an apartment that she shared with others and only stayed in "sporadically," there were no fingerprints linking her to the firearm, and she was not in the apartment when the police found the firearm but five other people were present. 520 A.2d at

259-60, 264-65.  The thin evidence in *Proctor* and *Curry* is readily distinguishable from this case where, again, DNA evidence linked Mr. Chew to the firearm that the ambulance driver saw him throw.  And while Mr. Chew had a passenger in the car, the ambulance driver testified that Mr. Chew, not the passenger, threw the firearm from the vehicle.

Viewing the evidence in the light most favorable to the verdict, a reasonable juror could find beyond a reasonable doubt that Mr. Chew knew the gun was present and had the ability and intent to exercise dominion and control over it.

### III.    Merger of CPWL and UF with UP

Lastly, Mr. Chew contends that, under the Double Jeopardy Clause, his convictions for UF and CPWL should merge with his conviction for UP.  "The Double Jeopardy Clause prohibits a second prosecution for a single crime and protects against multiple punishments for the same offense."  *Washington*, 53 A.3d at 308 (internal quotation marks omitted).  The Double Jeopardy Clause does not, however, "prohibit separate and cumulative punishment for separate criminal acts." *Id.* (internal quotation marks omitted).  To determine whether multiple convictions under distinct statutory provisions are permissible, we generally apply the *Blockburger* test, and assess whether each offense "requires proof of a fact which the other does not."  *Id.* at 309; *see Blockburger v. United States*, 284 U.S. 299, 304

(1932); *see also In re M.S.*, 171 A.3d 155, 158 (D.C. 2017) (explaining that "[t]he *Blockburger* analysis applies unless the legislature has clearly indicated a contrary intent with respect to the particular offense at issue").

As we have explained previously, UF, CPWL, and UP each contain different elements and do not merge. *See, e.g.*, *Washington*, 53 A.3d at 309 (concluding that UP, CPWL, and UF all contain separate elements); *Hammond v. United States*, 77 A.3d 964, 969 (D.C. 2013) (reiterating that UP and UF do not merge). "To prove UF, the government must show that the defendant [(1)] knowingly possessed a firearm; and [(]2) that firearm had not been registered as required by law." *Washington*, 53 A.3d at 309; D.C. Code § 7-2502.01. To establish CPWL, the government must demonstrate that the defendant (1) "carried a pistol, either openly or concealed on [their] person, outside the[ir] home or business"; and (2) did so "without a license." *Washington*, 53 A.3d at 309; D.C. Code § 22-4504(a)(1). Finally, to prove UP, the government must show that (1) the defendant was convicted of a crime punishable by imprisonment for a term exceeding one year; and (2) they owned or kept a firearm, or they had a firearm in their possession or under their control. *Washington*, 53 A.3d at 309; D.C. Code § 22-4503(a)(1). "Each of these offenses requires the finding of a different element." *Washington*, 53 A.3d at

309.

Mr. Chew nevertheless argues that his convictions for CPWL and UF should merge with his conviction for UP because UP—penalizing unlawful possession of a firearm by a person previously convicted of a felony—essentially imposes an enhanced punishment for violations of the District's firearm licensing and registration schemes. Pointing to this court's decision in *Grogan*, 271 A.3d 196, Mr. Chew argues that the Council meant to penalize UP through the more severe sentence in D.C. Code § 22-4503(a)(1), in lieu of authorizing cumulative convictions for UP, CPWL, and UF. (D.C. 2022). In *Grogan*, we concluded that convictions for unlawful demonstration[5] and demonstrating within a United States Capitol building[6] should merge, even though they are separate offenses under *Blockburger*, because there is "clear evidence" that the Council enacted the unlawful demonstration statute "to authorize a less-severe alternative to charging somebody for demonstrating in a Capitol building . . . , not [as] an additional punishment." 271 A.3d at 207. Here, Mr. Chew has not pointed us to any clear evidence that the Council intended UF and CPWL as "less-severe alternative[s]" to UP, *see id.*, and, in any event, we are bound by prior precedent concluding that these offenses do not merge, *see, e.g.*,

---

[5] D.C. Code § 22-1307(b).

[6] D.C. Code § 10-503.18.

*Washington*, 53 A.3d at 309.  Hence, we decline to merge Mr. Chew's convictions for CPWL or UF with his conviction for UP.

## IV.  Conclusion

For the foregoing reasons, we affirm Mr. Chew's convictions for UF, CPWL, and UP.

*So ordered.*

EASTERLY, *Associate Judge*, concurring: The majority opinion assumes without deciding that Mr. Chew has not, before this court, "waived" his unpreserved constitutional claims by virtue of his noncompliance with Super. Ct. Crim. R. 12(b), as recently amended in 2017.  I would address this important open question.

As I explain, *infra* Part I, the Supreme Court and our court have long recognized that the failure to preserve a claim of error before the trial court results in the forfeiture, not the waiver of that issue on appeal.  *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993); *Allen v. United States*, 495 A.2d 1145, 1151 & n.11 (D.C. 1985) (en banc).  Both the Supreme Court and our court have also long hewed to the principle that unpreserved errors before the trial court may be reviewed for plain error on appeal.  *See infra* Part II & III; *see also, e.g.*, *United States v. Atkinson*, 297 U.S. 157, 160 (1936); *Olano*, 507 U.S. at 733-34; *Watts v. United*

*States*, 362 A.2d 706, 709 (D.C. 1976) (en banc). But when it came to applying these principles to unpreserved claims of error subject to timeliness requirements under old versions of Rule 12, language in the old rule that described untimely claims as having been "waive[d]" generated substantial confusion. *See infra* Part IV; Super. Ct. Crim. R. 12(d) (1995). Some of our opinions assumed that, despite the reference in the old rule to "waiver," claims that were not preserved in compliance with old Rule 12 could be reviewed for plain error. *See, e.g.*, *Trotter v. United States*, 121 A.3d 40, 51 (D.C. 2015) (reviewing unpreserved claim of improper joinder for plain error); *Sandwick v. District of Columbia*, 21 A.3d 997, 1001 (D.C. 2011) (reviewing unpreserved discovery argument for plain error). Others, however, held that such unpreserved claims could not be considered on appeal absent good cause. *See, e.g.*, *Hartridge v. United States*, 896 A.2d 198, 224 (D.C. 2006) (holding unpreserved claim that statute was unconstitutional was waived and could not be considered on appeal); *Artis v. United States*, 802 A.2d 959, 965 (D.C. 2002) (holding unpreserved claim that evidence should have been suppressed was waived).

In 2017, the Superior Court Rules Committee substantially revised Rule 12 to address this confusion and clarify that claims raised out of time under the rule are not waived, they are simply "untimely." *See infra* Part IV; *see also* Super. Ct. Crim. R. 12(c)(3) (2017). This court has not yet addressed the impact of the 2017

amendment where, as here, the government asserts "waiver" due to noncompliance with Rule 12. We should do so here.

The government's argument that claims not timely preserved under Rule 12 as amended are still "waived" impacts not only defendants' substantive rights but also their ability to bring myriad claims of error—about improper venue, speedy trial rights, selective prosecution, grand jury errors, improper joinder, multiplicity, duplicity, severance, suppression of evidence, discovery, and the failure to state an offense—to this court in the first place. *See* Super. Ct. Crim. R. 12(b)(3). Without a clear interpretation of the revised Rule 12, defendants may be dissuaded from appealing constitutional and statutory errors that are plain. Now that the revised Rule 12 no longer uses the term "waiver," there is no compelling reason to depart from traditional notions of waiver, forfeiture, and plain error review, or to view unpreserved claims pursuant to Rule 12 as waived absent good cause. We should not prolong the current confusion. Instead, we should interpret the revised Rule 12 and clarify that unpreserved claims which fail to comply with the timing requirements of revised Rule 12 are forfeited—not waived—and remain on appeal reviewable for plain error.

### I.     Waiver Versus Forfeiture

Until this court's 1985 decision in *Allen* and the Supreme Court's 1993

decision in *Olano*, the difference between waiver and forfeiture remained murky. Courts often used the terms waiver and forfeiture interchangeably, without distinguishing between the two, and without consistency as to whether "waiver" meant total preclusion of consideration of an issue on appeal or something less. *See, e.g.*, *Poteat v. United States*, 330 A.2d 229, 231 (D.C. 1974) (stating that "a forfeiture" of constitutional claims "[is] sometimes referred to as a waiver" but that waiver "should be distinguished from the standards applicable to determine whether the right itself has been waived"); *United States v. Soto*, 794 F.3d 635, 649 n.7 (6th Cir. 2015) (explaining that "*Olano* was the first time a majority of the Supreme Court differentiated between 'waiver' and 'forfeiture'" and that "courts and scholars did not use the terms consistently until the Supreme Court clarified the difference in 1993"); *United States v. Lewis*, 492 F.3d 1219, 1221 (11th Cir. 2007) (explaining that, prior to *Olano*, the court often used the term "waiver" without "addressing the difference between waiver and forfeiture" and, despite concluding that a defendant's claims were waived, sometimes reviewed the merits of the claim on appeal).

In *Allen*, this court, sitting en banc, took deliberate steps to untangle waiver from forfeiture and differentiate the two terms. 495 A.2d at 1151 & n.11. We explained that "waiver . . . is 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 1151 n.11 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). We explained that forfeiture, by contrast, is a defendant's

"default" or failure to raise a claim before the trial court. *Id.* at 1151 & n.11. If a defendant fails to raise a timely objection before the trial court, the defendant has "*forfeited* [but not waived] his right to have this court consider on direct appeal the 'merits' of his claim under the court's regular standard of review" and that claim is instead subject to "plain error" review. *Id.* at 1151 (emphasis added, footnote omitted).

In *Olano*, the Supreme Court endorsed this same distinction between waiver and forfeiture. 507 U.S. at 733. The Court clarified that "[w]aiver is different from forfeiture." *Id.* "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Id*. (internal quotation marks omitted). The two carry different consequences; "forfeiture, as opposed to waiver, does not extinguish an 'error'" or preclude further review. *Id.* Instead, forfeiture alters how that claim may be reviewed on appeal: forfeited errors are reviewable only for plain error. *Id.* at 733-34.

*Allen* and *Olano* thus made clear that unpreserved errors should be considered forfeited, but not waived, and may be reviewed on appeal subject to the strictures of the test for plain error. *Allen*, 495 A.2d at 1151-52 & n. 11; *Olano*, 507 U.S. at 733-34.

## II.     The Availability of Plain Error Review

Even before there was a clear distinction between waiver and forfeiture, both our court and the Supreme Court recognized appellate courts' authority to correct plain errors not properly objected to in the trial court.

The Supreme Court appears to have first announced its own power to review unpreserved claims for plain error in *Wiborg v. United States*, 163 U.S. 632, 658 (1896) (explaining that "if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it"). *See* Fed. R. Crim. P. 52(b) advisory committee's note to subdivision (b) (citing *Wiborg*). The Court subsequently acknowledged that this authority was held by appellate courts generally. *Atkinson*, 297 U.S. at 160 (recognizing that "in exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings"). And it became "well settled that if a plain error vital to a defendant has been committed, there is power, notwithstanding absence of objection and exception, to notice and correct it on appeal." *Meadows v. United States*, 82 F.2d 881, 884 (D.C. Cir. 1936).

Soon after this court's creation, we recognized that we too had the power to

review unpreserved claims for plain error. *See Young v. United States*, 284 A.2d 671, 673 (D.C. 1971) (explaining that "in order for us to reverse the trial court [for its failure to suppress evidence sua sponte], we would have to hold that the way in which the police discovered the incriminating evidence was so patently illegal that it was pla[i]n error on the part of that court to fail to notice the inadmissibility of the proffered items"); *Watts*, 362 A.2d at 709 ("In order to discourage the intentional withholding of objections by defense counsel, errors not objected to at trial are unreachable on review *unless they fall within the purview of the plain error rule.*") (emphasis added); *see also, e.g.*, *Brown v. United States*, 289 A.2d 891, 893 (D.C. 1972) ("The possibili[ty] of suppression therefore being foreclosed [because of defendant's failure to file a pretrial motion], *absent a showing of plain error* which we do not find upon this record, the court did not err when it admitted [the] evidence" challenged on appeal) (emphasis added); *Adams v. United States*, 302 A.2d 232, 235 (D.C. 1973) (examining the "evidence as whole" to determine if the trial court plainly erred in failing to suppress evidence).

This common law doctrine was incorporated into court rules. When the Federal Rules of Criminal Procedure went into effect in 1946 (after their adoption by the Supreme Court in 1944 and transmission to Congress in 1945), Rule 52(b) endorsed the existing principle that appellate courts could notice and correct unpreserved plain errors and made clear this principle applied to trial courts too.

Fed. R. Crim. P. 52(b) (1946) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *see also* Fed. R. Crim. P. 52 advisory committee's note to subdivision (b) (noting "[t]his rule is a restatement of existing law," citing *Wiborg*). The analogous Superior Court Rules of Criminal Procedure, which went into effect in 1971, adopted the same standard.[1] *See* Super. Ct. Crim. R. 52(b) (1971); *see also Marshall v. United States*, 145 A.3d 1014, 1017 (D.C. 2016) (observing that the Superior Court Rules of Criminal Procedure "are closely modeled on the structure and substance of the Federal Rules of Criminal Procedure").

---

[1] One difference between the Federal Rules of Criminal Procedure and the Superior Court analogue, is that the former by their terms, "govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States." Fed. R. Crim. P. 1(a)(1). By contrast, the Superior Court Criminal Rules govern only "the procedure in all criminal proceedings in the Superior Court of the District of Columbia." Super. Ct. Crim. R. 1(a); *see also Watts*, 362 A.2d at 708 n.3 (noting that the Federal Rules of Criminal Procedure specifically make the rules "applicable to proceedings in the United States Courts of Appeals, but the Superior Court rules contain no such provision"). As a result, it is not clear that Super. Ct. Crim. R. 52(b) applies to this court. *See Watts,* 362 A.2d at 708 n.3; *see also Ford v. ChartOne, Inc.*, 834 A.2d 875, 880 (D.C. 2003) (noting that "[t]his court's jurisdiction is not part of the business of the Superior Court"). But whether Rule 52(b) technically applies to us or not makes little difference. It is clear the rule was meant to encapsulate the pre-existing common law plain error doctrine that this court has long applied, *see supra*, and it is only to be expected that our understanding of the common law doctrine of plain error and our interpretation of Rule 52(b) have advanced together, *see infra*.

The manner of review for plain error has evolved and, with the Supreme Court's decision in *Olano*, has become a structured four-pronged test.[2] *See* 507 U.S. at 732-35 (explaining that an appellate court must consider whether the defendant has shown that (1) there is error, (2) such error is "plain," meaning "clear" or "obvious," by the time of appellate review; (3) the error affected appellant's "substantial rights"; and (4) the error seriously affected "the fairness, integrity or public reputation of the judicial proceedings"); *see also Johnson v. United States*, 520 U.S. 461, 467 (1997) (summarizing the plain error test, citing *Olano*); *Headspeth v. United States*, 910 A.2d 311, 321 (D.C. 2006) (laying out the plain error test, quoting *Johnson*, which cites *Olano*); *In re Taylor*, 73 A.3d 85, 96 (D.C. 2013) (observing that "[t]he test for plain error is well-established" and laying out the four factors, quoting *Olano*). But the rationale for plain error review—"to encourage all trial participants to seek a fair and accurate trial the first time around" while allowing "obvious injustice [to] be promptly redressed," *United States v. Frady*, 456 U.S. 152, 163 (1982)—remains the same. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 135 (2009) (acknowledging the "careful balance [plain error review] strikes between judicial efficiency and the redress of injustice"); *In re*

---

[2] Although early cases from this court indicated that plain error review was highly discretionary, the en banc court in *Allen* noted that in fact, divisions of this court "typically . . . *did* consider the merits of appellant's claim and found no plain error." *Allen*, 495 A.2d at 1153.

*Taylor*, 73 A.3d at 95 (explaining that plain error review "places limits on [our] own authority to review errors raised for the first time on appeal so as to 'induce the timely raising of claims and objections' at trial to any error that has occurred to the defendant's detriment," while allowing this court to still review and correct "egregious" errors); *Headspeth*, 910 A.2d at 318 (recognizing that plain error review allows courts to correct "a miscarriage of justice" but also makes the failure to raise claims before the trial court "particularly costly").

### III.    Plain Error Review and Trial Court Timing Requirements

From the beginning, the plain error doctrine acknowledged in Rule 52(b) had to be reconciled with other Federal Rules of Criminal Procedure and the analogous Superior Court Criminal Rules that imposed strict timing requirements on when parties had to bring certain claims to the attention of the trial court.  But where possible conflict was identified between the plain error doctrine and these strict timing requirements, our court and the Supreme Court resolved that conflict in favor of applying plain error review.

Specifically, Rule 30 in both the federal and local rules state that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict."  Fed. R. Crim. P. 30 (1946); Super. Ct. Crim. R. 30 (1971).  This rule could be read to flatly bar any consideration

of an untimely instructional error. But our court's en banc decision in *Watts* rejected such a reading of Rule 30, concluding that, notwithstanding the rule's categorical language, the plain error doctrine took precedence and allowed for review of unpreserved instructional claims. 362 A.2d at 708 & n.3 (recognizing Rule 30's instruction that "[n]o party could assign . . . error" to a jury instruction unless they objected before the jury retired to deliberate, but concluding that "[n]onetheless, where there is plain error concerning instructions such an error is subject to review"); *see also Allen*, 495 A.2d at 1151-52 (holding that plain error review applied to unpreserved claims of error in jury instructions pursuant to Rule 30).

The Supreme Court reached the same conclusion in *Frady*. Examining the interaction between Rule 52(b) and Rule 30, the Court concluded that Rule 52(b) "somewhat tempers the severity of Rule 30. It grants the courts of appeals the latitude to correct particularly egregious errors on appeal regardless of a defendant's trial default." 456 U.S. at 163. And in *Jones v. United States*, 527 U.S. 373, 388 (1999), the Court acknowledged that "[w]hile Rule 30 could be read literally to bar

any review of [an unpreserved] claim of error, our decisions instead have held that an appellate court may conduct a limited review for plain error" under Rule 52(b).[3]

## IV. Rule 12 and the Government's Waiver Argument

Against this backdrop, the government argues that "[p]ursuant to Rule 12(b)(3)(B)(v) 'objections based on defects in the indictment are waived unless raised prior to trial.'" United States Brief at 6 (quoting *Conley v. United States*, 79 A.3d 270, 276 (D.C. 2013)). Mr. Chew's Second Amendment challenges to the District's firearm registration statute and firearms licensing statute are effectively assertions that the indictment charging him with these offenses was defective. *Id.* at 6-7. Accordingly, the government asserts that Mr. Chew "waived" these arguments pursuant to Rule 12. *Id.* at 7. The government fails to acknowledge, much less grapple with the fact that Rule 12 has evolved; but that evolution is key to understanding its current text.

As noted above, the Superior Court Criminal Rules of Procedure are modeled

---

[3] Following *Jones*, Rule 30 was amended to clarify that "[f]ailure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)." Fed. R. Crim. P. 30(d) (2002); Super. Ct. Crim. R. 30(d) (2016); *see also* Fed. R. Crim. P. 30 advisory committee's note to the 2002 Amendments (explaining that the rule was revised in light of the Court's observation in *Jones*).

on the federal rules. The original text of Fed. R. Crim. P. 12 instructed that

> "[d]efenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial . . . . Failure to present any such defense or objection as herein provided constitutes a *waiver* thereof, but the court for cause shown may grant relief from the waiver."

Fed. R. Crim. P. 12(b)(2) (1946) (emphasis added). As originally drafted, Rule 12 of the Superior Court Rules of Criminal Procedure likewise provided that the failure to comply with its timing requirements constituted "a waiver." I refer to this iteration of the federal and local rule as "old Rule 12."[4]

At the time old Rule 12 was adopted by the federal courts and this court, it was not yet clear that waiver and forfeiture meant different things. *See supra* Part I; *see also Soto*, 794 F.3d at 648-49 (explaining that "[w]hen the term 'waiver' first appeared in [Fed. R. Crim. P.] 12(b)(2) . . . the term may have been unremarkable because the Supreme Court had not articulated a clear differentiation between a

---

[4] In fact, there was not just one "old Rule 12." For example, Super. Ct. Crim. R. 12 initially did not use the term "waiver" in conjunction with untimely suppression motions. *See* Super. Ct. Crim. R. 12(b)(3) (1976) ("A motion to suppress evidence, whether tangible or intangible, shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds of the motion.").

'waiver' and a 'forfeiture,'" as it would in *Olano*) (internal quotation marks and citation omitted). Some of our earliest cases appear to have applied plain error review to unpreserved claims that fell under old Rule 12. *See, e.g.*, *Nichols v. United States*, 343 A.2d 336, 341 (D.C. 1975) (suggesting that an unpreserved claim that an indictment failed to adequately state the elements of an offense could be reviewed if a defendant demonstrated "substantial prejudice"); *Bell v. United States*, 332 A.2d 351, 354 (D.C. 1975) (considering whether claim of misjoinder constituted "plain error requiring reversal"). Others, however, strictly construed the "waiver" language in old Rule 12 to foreclose review of unpreserved claims, absent a showing of good cause under the rule. *See, e.g.*, *Duddles v. United States*, 399 A.2d 59, 64 (D.C.1979) (concluding that defendant had waived an unpreserved suppression claim pursuant to Rule 12(b)); *Streater v. United States*, 478 A.2d 1055, 1058 (D.C. 1984) (concluding that, where defendant did not file a motion to suppress before trial pursuant to old Rule 12, he "waived the issue on appeal").

Even after our court and the Supreme Court elucidated the distinction between waiver and forfeiture in *Allen* and *Olano* and clarified that courts should review forfeited errors for plain error on appeal in *Watts*, *Allen*, *Frady*, and *Olano*, the "waiver" language in old Rule 12 continued to cause confusion. In some cases, we applied plain error review to claims arising under old Rule 12 notwithstanding (and without addressing) the rule's "waiver" language. *See, e.g.*, *Trotter*, 121 A.3d at 51

(reviewing unpreserved claim of improper joinder for plain error); *Sandwick*, 21 A.3d at 1001 (reviewing unpreserved discovery argument for plain error); *Brockington v. United States*, 699 A.2d 1117, 1119 n.3 (D.C. 1997) (reviewing unpreserved suppression argument for plain error). In others, we interpreted the instruction in old Rule 12 that untimely claims were "waived," absent good cause, to apply to unpreserved claims on appeal without addressing the true meaning of waiver under *Allen* and *Olano*, or the traditional rule that unpreserved claims should be reviewed for plain error on appeal. *See, e.g.*, *Hartridge*, 896 A.2d at 224 (holding unpreserved claim that statute was unconstitutional was waived and could not be considered on appeal); *Artis v. United States*, 802 A.2d at 965 (holding unpreserved claim that evidence should have been suppressed was waived); *Watley v. United States*, 918 A.2d 1198, 1200 (D.C. 2007) (same).[5] And in still others we indicated

---

[5] Many of these cases also seem to rely on D.C. Code § 23-104(a)(2) in holding that unpreserved claims that evidence must be suppressed are waived on appeal. I am dubious. Section 23-104 confers the right to appellate review on the government in criminal cases. Subsection (a)(1) specifically authorizes the government to bring interlocutory appeals challenging adverse suppression rulings, and in aid of that right subsection (a)(2) requires that motions to suppress be made pretrial.

It makes sense that this statute would generally disfavor untimely suppression motions, but still allow them to be filed before the Superior Court subject to a good cause safety valve. *Olafisoye v. United States*, 857 A.2d 1078, 1084-85 (D.C. 2004) (explaining that under D.C. Code § 23-104(a)(2), defendants must bring a motion to suppress "before trial" unless they can "show good cause for a failure to do so");

that old Rule 12's interaction with plain error review was an unresolved issue. *See, e.g.*, *Moghalu v. United States*, 122 A.3d 923, 927 n.3 (D.C. 2015) (suggesting that whether claims not raised in compliance with Rule 12 are waived or should be reviewed for plain error is an open question); *Hagans v. United States*, 96 A.3d 1, 40 n.116 (D.C. 2014) (declining to decide whether a claim of misjoinder first raised on appeal has been waived or should be reviewed for plain error).

The non-standard use of the term "waiver" in old Rule 12 generated confusion among federal courts as well. Some courts viewed claims not timely filed under the Rule 12 as has having been forfeited and reviewed them for plain error on appeal. *See, e.g.*, *United States v. Clarke*, 227 F.3d 874, 881 (7th Cir. 2000) (concluding that "waiver" in Rule 12 was more accurately viewed as "forfeiture"); *United States v. Buchanon*, 72 F.3d 1217, 1226-27 (6th Cir. 1995) (viewing untimely suppression

---

Rule 12(c)(3) (allowing a defendant to bring an untimely motion to suppress before the Superior Court "if the party shows good cause"). If a defendant prevailed on a mid-trial suppression motion and the government took its statutorily authorized appeal, litigation of that appeal could substantially interrupt the trial proceedings. But those same concerns do not support an interpretation of D.C. Code § 23-104(a)(2) that curtails plain error review by this court. There is no need for a government appeal in a situation where a defendant did not move to suppress. And there is no interruption of trial court proceedings when a defendant raises a suppression issue for the first time in his appeal from his conviction.

claim as forfeited and reviewable for plain error on appeal). Meanwhile, others concluded that, *Olano* and Fed. R. Crim. P. 52(b) notwithstanding, claims not timely filed under old Rule 12 could only be reviewed for good cause. *See, e.g.*, *United States v. Weathers*, 186 F.3d 948, 952-58 (D.C. Cir. 1999) (concluding that untimely claims of error pursuant to Rule 12 are waived on appeal and "may not be revived" absent a showing of good cause); *United States v. Burke*, 633 F.3d 984, 987-88 (10th Cir. 2011) (concluding that Rule 12's waiver language applied to unpreserved claims on appeal and foreclosed review, absent good cause).[6]

---

[6] The Supreme Court never resolved this circuit split regarding the interpretation of old Rule 12. While *Weathers* cites to the discussion of the old rule in *Davis v. United States*, 411 U.S. 233 (1973), *Davis* both pre-dates *Olano* and addressed the consequences of a defendant's failure to raise a defect in the indictment pursuant to old Rule 12 on defendant's petition for collateral review under 18 U.S.C. § 2255. *Weathers*, 186 F.3d at 952-58; *Davis*, 411 U.S. at 234, 236-43. The Supreme Court in *Davis* made broad statements that claims "once waived pursuant to [Rule 12] may not later be resurrected, either in the criminal proceedings or in federal habeas, in the absence of [a] showing of [good] 'cause.'" *Id.* at 242-43. But the court was focused on whether Rule 12's "good cause" standard governs a *district court's* review of unpreserved claims on habeas and whether the district court in *Davis* abused its discretion in finding a lack of good cause. *Id.* at 242, 245.

The Supreme Court also discussed old Rule 12 in *Shotwell Manufacturing Co. v. United States*, 371 U.S. 341 (1963), but that case similarly pre-dates *Olano* and also did not resolve whether Rule 52(b)'s plain error standard applied to untimely claims pursuant to old Rule 12 raised for the first time on direct review. *Id.* at 362-63. The Court in *Shotwell* stated that defendants "lost" their objection under old Rule 12 that their petit and grand juries were improperly constituted because of

To address this confusion and align Rule 12 with the Supreme Court's understanding of waiver and forfeiture in *Olano* (which aligned with our court's understanding in *Allen*), the Federal Advisory Committee revised Fed. R. Crim. P. 12 in 2014 and removed the term "waiver" from the rule. The Advisory Committee acknowledged that "the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right" and explained that it "decided not to employ the term 'waiver'" in the revised rule "to avoid possible confusion." Fed. R. Crim. P. 12 advisory committee's note to the 2014 Amendments to Rule 12(c). In 2017, the Superior Court adopted these same changes to its version of Rule 12. *See* Super. Ct. Crim. R. 12(c)(3) (2017). Both the federal and local rule now state that certain "defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits," Fed. R. Crim. P. 12(b)(3); Super. Ct. Crim. R. 12(b)(3), and "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely[;] [b]ut a court may consider the defense, objection, or request if the party shows good cause," Fed. R. Crim. P. 12(c)(3); Super. Ct. Crim. R. 12(c)(3).

---

their "years of inaction," *id.* at 362, but then went on to consider whether the defendants were "prejudiced in any way by the alleged illegalities in the selection of the juries," *id.* at 363.

The government's argument that Mr. Chew waived his constitutional claims by virtue of his noncompliance with Rule 12 ignores the 2017 deletion of the text of the old rule providing that "[a] party waives any Rule 12(b)(3) defense, objection, or request not [timely] raised." *See* Super. Ct. Crim. R. 12(d) (2016). The government cites to *Conley v. United States*, 79 A.3d 270, 276 (D.C. 2013). But that case simply relies on old Rule 12 for the proposition that "objections based on defects in the indictment are waived unless raised prior to trial." 79 A.3d at 276; Super. Ct. Crim. R. 12(d) (1995).

Analyzing Rule 12 as amended, I would hold that established notions of waiver and forfeiture apply to claims not timely preserved under Rule 12. Such claims should be considered forfeited, not waived, and when raised to this court on appeal they should be reviewed for plain error.

My conclusion is compelled, first, by the text of the amended rule. Even assuming that the Superior Court Criminal Rules apply to this court's appellate review, *but see supra* note 1, nothing in the amended rule's text suggests that the rule addresses the availability of appellate review or contravenes the traditional rules of waiver and forfeiture. The amended rule simply directs that claims of error not raised before trial are "untimely." Super. Ct. Crim. R. 12(c)(3). As *Olano* makes clear, "the failure to make the timely assertion of a right" forfeits but "*does not*

*extinguish*" that error. 507 U.S. at 733 (emphasis added). And as *Olano*, *Allen*, and Rule 52(b) all instruct, plain error review applies to "errors that were forfeited because [they were] not timely raised in [the trial] court." *Olano*, 507, U.S. at 731; *see also Allen*, 495 A.2d at 1151-52.

Moreover, while Rule 12(c)(3) states that "a court may consider" an "untimely . . . defense, objection, or request if the party shows good cause," the text does not purport to apply the good cause standard to appellate review or supersede the principle that, even where another rule generally limits consideration of an issue before the trial court, the plain error review doctrine nevertheless authorizes review in the unusual case that plain error can be shown. *See, e.g.*, *Watts*, 362 A.2d at 708 & n.3 (concluding that, despite the categorical language in Rule 30 limiting review of untimely claims, the plain error standard in Rule 52(b) allowed for review of unpreserved instructional claims on appeal); *Allen*, 495 A.2d at 1151-52 (holding that plain error review applied to unpreserved claims of error in jury instructions pursuant to Rule 30); *Jones*, 527 U.S. at 388 (acknowledging that "[w]hile Rule 30 could be read literally to bar any review of [an unpreserved] claim of error," courts may still review unpreserved instructional errors for plain error under Rule 52(b)). Indeed, the Supreme Court has indicated that plain error review under Rule 52(b) applies to *all* unpreserved claims on direct appeal. *Puckett*, 556 U.S. at 136 (rejecting argument that plain error does not apply to unpreserved claim that

government violated terms of plea agreement and explaining that "the defendant has the opportunity to seek vindication of those rights in district court; if he fails to do so, Rule 52(b) as clearly sets forth the consequences for that forfeiture *as it does for all others*") (emphasis added).[7] Absent the term "waiver," nothing in the text of the amended rule appears to upset established rules of forfeiture or require appellate courts to apply a "waiver"-absent-good-cause standard to unpreserved errors on direct appeal, rather than the normal plain error standard.[8]

Second, my interpretation of the amended Rule 12 is supported by drafting history of the analogous federal rule. As detailed *supra*, the Federal Advisory Committee deleted the word "waiver" from federal Rule 12 to conform the rule to common understandings of waiver and forfeiture following *Olano*. *See* Fed. R.

---

[7] Requiring an appellant to demonstrate good cause for review of unpreserved errors on appeal would not only cut against this instruction, but it would necessitate fact-finding that is irreconcilable with our "ordinary function." *Johnson v. United States*, 385 A.2d 742, 743 (D.C. 1978) (explaining that the "ordinary function" of an appellate court "is to review the application of the law to facts found, not to find those facts in the first instance"); *see also Soto*, 794 F.3d at 655 (noting the difficulty of applying a good cause standard on appeal because of the need "to develop[] and analyz[e] facts to determine whether a defendant has shown good cause for the late filing").

[8] If a defendant made an untimely Rule 12 motion before the trial court and the trial court denied that motion for lack of good cause, we would review that good cause finding for an abuse of discretion. *See Bellinger v. United States*, 127 A.3d 505, 522 (D.C. 2015) (reviewing trial court's "good cause" determination in the post-conviction context for abuse of discretion).

Crim. P. 12 advisory committee's note to the 2014 Amendments to Rule 12(c) (recognizing that "the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right" and that the Advisory Committee therefore "decided not to employ the term 'waiver'" in the revised rule). The Advisory Committee's decision to delete the word "waiver" from the rule was "quite intentional"; "the committee believed that courts were incorrectly treating the failure to file a timely pretrial motion as an intentional relinquishment of a known right, and therefore an absolute bar to appellate review." *Soto*, 794 F.3d at 652. As the Sixth Circuit concluded in *Soto*, "[t]he Advisory Committee's conscious decision to abandon the term 'waiver' makes its intent crystal clear: courts may no longer treat a party's failure to file a timely Rule 12(b)(3) pretrial motion as an intentional relinquishment of a known right" and therefore an "absolute bar to appellate review." *Id.* at 652.

Third, I see no policy rationale for precluding plain error review of unpreserved claims governed by Rule 12 but permitting plain error review for all other unpreserved claims brought to this court. While failing to raise an objection before the trial court cuts against judicial efficiency, *see Puckett*, 556 U.S. at 135, I see nothing uniquely disruptive about raising Rule 12-type claims about defects in instituting the prosecution, defects in the indictment or information, or errors related to the suppression of evidence, severance of charges or defendants, or discovery.

And if they rise to the level of "egregious errors" on direct appeal such that they can satisfy the test for plain error, *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *Frady*, 456 U.S. at 163), they should be reviewable and reversible by this court.

Fourth, a number of federal courts have reached this same conclusion and determined that unpreserved claims should not be considered waived under the revised Rule 12. For example, in *United States v. Sperrazza*, 804 F.3d 1113 (11th Cir. 2015), the Eleventh Circuit determined that because "[t]he new version of Rule 12 . . . makes no mention of 'waiver,'" claims not timely preserved under Rule 12 are "therefore subject to review for plain error under the new rule even if [a defendant] does not show 'good cause' for failing to present the claim before trial." *Id.* at 1119. Similarly, in *United States v. Vasquez*, 899 F.3d 363 (5th Cir. 2018), the Fifth Circuit explained that, although prior to Rule 12's amendment, the court "ascribed great significance to the use of the word 'waived,'" the rule's amendment and advisory committee notes "make clear that [the court's] prior approach does not endure." *Id.* at 372. Rather, the amended text of the rule "clarif[ies] that Rule 12 recognizes the traditional distinction between forfeiture and waiver" and a defendant's forfeited challenge should be reviewed "for plain error." *Id.* at 373. And in *Soto*, the Sixth Circuit concluded that the rule's revised text and drafting history made clear that "appellate courts are not to presume that a defendant's failure to file a timely pretrial motion is a waiver," that "Rule 12 is generally directed at the district

courts, not the appellate courts," and that, accordingly, "plain-error review applies to claims [governed by Rule 12] raised for the first time on appeal." 794 F.3d at 652-55.[9]

*      *      *

---

[9] I acknowledge that the federal circuits are split on this issue and that several circuits have held that, even under Rule 12 as amended, unpreserved claims are "waived" on appeal absent a showing of good cause. *See, e.g.*, *United States v. Cardona*, 88 F.4th 69, 76-77 (1st Cir. 2023); *United States v. Desu*, 23 F.4th 224, 232 (3d Cir. 2022); *United States v. Moore*, 769 F.3d 264, 267 (4th Cir. 2014); *United States v. Daniels*, 803 F.3d 335, 352 (7th Cir. 2015); *United States v. Fry*, 792 F.3d 884, 888 (8th Cir. 2015); *United States v. Bowline*, 917 F.3d 1227, 1229 (10th Cir. 2019). But I find these cases unpersuasive. Many give this issue only a cursory treatment and cite or quote authorities that lead them directly back to old Rule 12, *see Desu*, 23 F.4th at 232; *Daniels*, 803 F.3d at 352; *Fry*, 792 F.3d at 888. Others rely on the advisory committee notes to conclude that an untimely claim is "waived" without reconciling that view with cases such as *Soto* and *Vasquez*, which conclude the opposite. *Compare, e.g.*, *Cardona*, 88 F.4th at 76 (stating that the advisory committee notes to Rule 12's 2014 amendments "made clear" that "review of an untimely 12(b)(3) motion is foreclosed absent good cause, regardless of whether the appellant intended to forgo an objection during trial"), *with Vasquez*, 899 F.3d at 372-73 (citing the same advisory committee note as explaining that "Rule 12 recognizes the traditional distinction between forfeiture and waiver" and an "untimely—that is, forfeited" challenge should be reviewed "for plain error); *Soto*, 794 F.3d at 652 (quoting the advisory committee note as "provid[ing] additional evidence" that a "failure to file a timely pretrial motion" should not be treated as a waiver). Although the Tenth Circuit's opinion in *Bowline* gives the issue more thorough treatment, it relies in part on earlier circuit case law treating as waived untimely claims under old Rule 12, *see* 917 F.3d at 1236 (concluding that the 2014 amendments "did not change the standard for appellate review" for claims pursuant to Rule 12 as analyzed in *United States v. Burke*, 633 F.3d 984, 988-89 (10th Cir. 2011)), and in part on the text of Fed. R. Crim. P. 1(a)(1), 917 F.3d at 1230-31, *but see supra* note 1.

Applying plain error review to claims not timely preserved under Rule 12 strikes a "careful balance . . . between judicial efficiency and the redress of injustice." *Puckett*, 556 U.S. at 135 (citing *Young*, 470 U.S. at 15). Reviewing claims only for plain error provides an incentive for defendants to timely raise claims before the trial court because "meeting all four prongs [of the test] is difficult, 'as it should be.'" *Puckett*, 556 U.S. at 135 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83, n. 9 (2004)); *accord Headspeth*, 910 A.2d at 318 (noting that the plain error standard makes the failure to preserve claims "particularly costly") (quoting *Allen*, 495 A.2d at 1151). But it also ensures that plain errors of law (including violations of constitutional rights) that affected a defendant's substantial rights and seriously affected the fairness, integrity or public reputation of the judicial proceedings do not go unremedied. *See, e.g.*, *Johnson*, 520 U.S. at 467 (summarizing test for plain error). Foreclosing appellate review entirely for claims not timely preserved under Rule 12 would upset that balance and contravene longstanding principles of forfeiture and waiver. Especially absent any directive in Rule 12 as amended that claims not raised before the trial court should be considered "waived" and that plain error review does not apply on appeal, I would hold that Mr. Chew's unpreserved constitutional claims in this case were merely forfeited and are reviewable for plain error.